# EXHIBIT B

Case 4:21-cv-01262   Document 1-2   Filed on 04/15/21 in TXSD   Page 2 of 10

3/25/2021 7:37 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 51851679
By: KATINA WILLIAMS
Filed: 3/25/2021 7:37 PM

CAUSE NO. 2021-14691

| | | |
|---|---|---|
| MARATHON OIL COMPANY | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| KOCH ENERGY SERVICES, LLC | § | |
| | § | |
| *Defendant.* | § | 152nd JUDICIAL DISTRICT |

## PLAINTIFF'S FIRST AMENDED PETITION

Plaintiff Marathon Oil Company ("Marathon") files this First Amended Petition for Declaratory Relief against Defendant Koch Energy Services, LLC ("Koch") pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, and for breach of contract, and respectfully shows as follows:

### I. PARTIES

1. Plaintiff Marathon is a corporation registered under the laws of the State of Ohio with its principal place of business in Houston, Texas.

2. Defendant Koch is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Wichita, Kansas. Koch may be served through its registered agent, C T Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas 75201.

### II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter under Texas Civil Practices & Remedies Code Section 37.003 because it is, among other things, a lawsuit for declaratory judgment. This Court also has jurisdiction because the amount in controversy, excluding interest and costs, exceeds the minimum jurisdictional limits of this Court.

4. Texas law applies to this dispute pursuant to the Parties' contract.

5. This Court has personal jurisdiction over Koch because Marathon's claims arise out of Koch's contacts and conduct in Texas, including communications from and with Koch's Houston, Texas office. Koch and Marathon also agreed that the interpretation and performance of the parties' contract would be governed by Texas law.  Koch, which is registered to do business in Texas, and which has contracted with Texas residents and citizens, has conducted business in Texas at all material times with regard to the negotiation and performance of the Parties' contractual relationship.

6. Venue is proper in Harris County, Texas pursuant to Texas Civil Practices & Remedies Code Section 15.002 because a substantial part of the events or omissions that give rise to Marathon's claims occurred in Harris County.

7. For purposes of compliance with Texas Rule of Civil Procedure 47, Marathon seeks monetary relief well in excess of $1 million.

### III.   DISCOVERY CONTROL PLAN

8. Discovery will be conducted under Level 3 of Texas Rule of Civil Procedure 190.

### IV.   FACTUAL BACKGROUND

9. This action arises out of Marathon's declaration of Force Majeure in the wake of the extreme weather that affected the United States in February 2021, unofficially referred to as Winter Storm Uri.

10. Effective October 1, 2009, Marathon and Koch executed a Base Contract for Sale and Purchase of Natural Gas ("Base Contract") based on a form published by NAESB.

11. Pursuant to Section 15.5, the Parties agreed that Texas law governs "[t]he interpretation and performance of . . . the Base Contract."

12. On September 4, 2020 the Parties agreed that Marathon would sell and Koch would purchase 30,000 MMBTUs of gas on a Firm basis each day from February 1, 2021 to February 28, 2021. This agreement was reflected in Transaction Confirmation No. 346595 and subject to the terms and conditions of the Base Contract.

13. On September 17, 2020, the Parties agreed that Marathon would sell and Koch would purchase 20,000 MMBTUs of gas on a Firm basis each day from February 1, 2021 to February 28, 2021. This agreement was reflected in Transaction Confirmation No. 346762 and subject to the terms and conditions of the Base Contract.

14. In February 2021, the States of Oklahoma and Texas, among others, experienced unusually cold temperatures, as well as snow and ice. As a result, natural gas suppliers experienced multiple catastrophic issues including frozen pipes, failure or damage to wells and other equipment including frozen and damaged meters, and power outages at gathering, processing, and transportation facilities. Marathon's wells, meters, and equipment, as well as the gathering and processing facilities that processed Marathon's natural gas were impacted by this extreme weather event.

15. Gas that Marathon transported on the Midship Pipeline in Oklahoma was used to supply the gas to Koch pursuant to Transaction Confirmation Nos. 346595 and 346762.

16. Transaction Confirmation Nos. 346595 and 346762 both specified Bennington Hub on the Midship Pipeline as the Delivery Point. As a result of the extreme weather, Marathon was unable to deliver its gas to Koch at the Bennington Hub Delivery Point on the Midship Pipeline.

17. The winter storm caused multiple related issues. To start, the weather damaged Marathon's wells and gathering equipment, which materially limited Marathon's supply of gas. Additionally, each of the gas processing plants that Marathon uses to process gas that is to be

shipped on the Midship Pipeline also declared Force Majeure. These gas processing plants reportedly experienced a general drop in natural gas supply and had other potential operational issues. These gas processing plants were unable to deliver Marathon's gas to the Midship Pipeline because, among other potential reasons, they lacked sufficient pressure. Accordingly, Marathon was unable to deliver its gas to Koch at the Bennington Hub on the Midship Pipeline.

18. Section 11 of the Base Contract contains a Force Majeure clause which provides that "neither party shall be liable to the other for failure to perform a Firm obligation, to the extent such failure was caused by Force Majeure."

19. The Base Contract defines Force Majeure to include, among other events: "acts of God"; "storms"; and "weather related events affecting an entire geographic region, such as low temperatures which cause freezing or failure of wells or lines of pipe."

20. Any failure by Marathon to deliver gas to Koch in February 2021 pursuant to Transaction Confirmation Nos. 346595 and 346762 or any other transaction encompassed by the Base Contract was caused by Force Majeure. By the plain and unambiguous terms of the Parties' Base Contract, Marathon is not liable to Koch for any failure to perform.

21. Marathon provided notice of the Force Majeure to Koch as required by the Base Contract on February 15, 2021, writing that "due to inclement weather and freezing temperatures in Oklahoma, Marathon Oil Company production volumes have been curtailed."

22. Marathon also provided a second notice of the Force Majeure to Koch later that same day, noting that the Force Majeure event "began on February 13th and is affecting our ability to ship via the Midship Pipeline. Our transaction confirmations specify the Midship Pipeline for delivery. Therefore, per the express provisions of the Base Contract . . . we are relieved of our obligation to deliver gas."

23. On February 15, 2021, at least one Houston-based Koch Natural Gas Trader rejected Marathon's invocation of Force Majeure over instant message and text message.

24. Then, on March 10, 2021, Koch's Natural Gas Trader wrote to Marathon from Houston that Marathon had failed to comply with its obligations under the Base Contract's Force Majeure provision to "find any available replacement gas to meet its firm delivery obligations."

25. Despite declaring Force Majeure in February 2021, Marathon sold over 1,300,000 MMBTUs of natural gas to Koch in February 2021.

26. It is undisputed that Marathon sold approximately $22,150,134.74 to Koch in February 2021 based on invoice 349725.

27. Pursuant to Sections 7.1, 7.2, and 7.4 of the Base Contract, Koch owes this undisputed and "correct amount" to Marathon.

28. Koch has refused to tender this amount.

29. Instead, on March 12, 2021, Koch delivered an invoice to Marathon in Texas pursuant to Section 7.3 of the Base Contract that includes $9,820,964 in "cover damages" based on Koch's alleged purchases on the spot market resulting from Marathon's declaration of Force Majeure. Koch delivered a similar invoice to Marathon in Texas on March 23, 2021, again claiming that Marathon owes $9,820,964 in "cover damages."

30. Koch is basing its demand for $9,820,964 on the "Spot Price Standard" set forth in Section 3.2 of the Base Contract.

31. Marathon disputes and denies that it owes the $9,820,964 because Marathon validly declared Force Majeure pursuant to Section 11 of the Base Contract.

32. In the March 12 and the March 23 invoices, Koch engaged in impermissible "netting" whereby it deducted the $9,820,964 in alleged "cover damages" from what is actually

5

owed to Marathon for natural gas that was actually purchased by Koch. In short, Koch engaged in improper self-help, deducting its so-called "cover damages" from what Koch owes to Marathon for natural gas bought by Koch. Koch has repudiated and breached the Base Contract.

33. Section 7.7 of the Base Contract only allows for the netting of "all undisputed amounts due and owing." The amount sought by Koch for "cover damages" is disputed, however, and the basis for this lawsuit.

34. Further, Section 7.7 of the Base Contract unambiguously states that "no payment required to be made pursuant to . . . Section 7.3 shall be subject to netting under this Section." The contractual basis for Koch's demand for $9,820,964 is Section 7.3, pursuant to the Spot Price Standard in Section 3.2.

35. Koch's netting of the disputed $9,820,964 against the undisputed amount owed to Marathon therefore violates the plain terms of the Base Contract.

## V. CAUSES OF ACTION

### Count 1: Declaratory Judgment

36. Marathon incorporates all of the foregoing paragraphs by reference as if fully set forth herein.

37. There is a present and existing good faith dispute between Marathon and Koch concerning their rights and obligations under the Base Contract, including: (1) whether the extreme weather caused by the February 2021 winter storm and its resulting impacts constitute Force Majeure under the Base Contract and thereby excused Marathon from any failure to perform; and (2) whether Marathon owes damages to Koch under the Base Contract.

38. Accordingly, this is a claim for declaratory judgment by Marathon pursuant to Texas Civil Practice & Remedies Code Section 37.001, *et seq.*, for the purpose of determining rights and obligations under the Base Contract.

39. Marathon seeks declarations that:

    a. The extreme weather caused by the February 2021 winter storm and its resulting impacts on Marathon's operations constitute Force Majeure under the Base Contract;

    b. Marathon was therefore excused by Force Majeure from any failure to perform under the Base Contract; and

    c. Marathon therefore owes no damages to Koch under the Base Contract.

**Count 2: Breach of contract**

40. Marathon incorporates all of the foregoing paragraphs by reference as if fully set forth herein.

41. The Parties validly executed the Base Contract effective October 1, 2009.

42. The Parties further agreed that Marathon would sell and Koch would buy gas from the Midship Pipeline at the Bennington Hub delivery point pursuant to Transaction Confirmation Nos. 346595 and 346762.

43. It is undisputed that Marathon sold $22,150,134.74 of gas to Koch in February 2021, and that Koch owes Marathon that amount pursuant to Sections 7.1, 7.2, and 7.4 of the Base Contract.

44. Koch has engaged in impermissible "netting" whereby it deducted the $9,820,964 in alleged "cover damages" from what is actually owed to Marathon for natural gas that was actually purchased by Koch.

45. Koch's improper self-help through netting the disputed amount it is claiming pursuant to Sections 7.3 and 3.2 as a result of Marathon's declaration of Force Majeure is a repudiation and breach of Section 7.7 of the Base Contract.

46. Section 7.7 only allows netting of "undisputed" amounts, and unambiguously excludes the basis for Koch's demand for $9,820,964.

47. Koch's netting of the disputed $9,820,964 against the undisputed amount owed to Marathon therefore violates the plain terms of the Base Contract and has caused monetary damages to be suffered by Marathon.

## VI.   CONDITIONS PRECEDENT

48. All conditions precedent have been met, have occurred, or have been waived.

## VII.   ATTORNEYS' FEES

49. Marathon is entitled to reasonable and necessary attorneys' fees and costs under Texas Civil Practices & Remedies Code Section 37.001, *et. seq.*

## VIII.   JURY DEMAND

50. Marathon demands a jury trial on all triable issues.

## IX.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Marathon respectfully requests that the Court:

    a. Determine, adjudicate, and declare the rights and obligations of the Parties as set forth above;

    b. Award Marathon actual damages;

    c. Award Marathon pre-judgment and post-judgment interest in the maximum amount permitted by law;

    d. Award Marathon costs and reasonable and necessary attorneys' fees as are equitable and just; and

  e.  Grant Marathon all other relief as the Court may deem proper and just.

Dated: March 25, 2021      Respectfully submitted,

            **AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, PC.**

            */s/ Timothy C. Shelby*
            Timothy C. Shelby
            State Bar No. 24037482
            Monica Uddin
            State Bar No. 24075195
            Justin S. Rowinsky
            Texas Bar No. 24110303
            1221 McKinney, Suite 2500
            Houston, Texas 77010
            Telephone: (713) 655-1101
            Facsimile: (713) 655-0062
            tshelby@azalaw.com
            muddin@azalaw.com
            jrowinsky@azalaw.com

            **ATTORNEYS FOR PLAINTIFF**
            **MARATHON OIL COMPANY**