United States District Court
Southern District of Texas
**ENTERED**
January 18, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARATHON OIL COMPANY, *Plaintiff* | § § § |
| v. | § §   CIVIL ACTION NO. 4:21-CV-1262 |
| KOCH ENERGY SERVICES, LLC, *Defendant.* | § § § § |

### MEMORANDUM AND ORDER

Before the Court is Plaintiff Marathon Oil Company's ("Marathon's") Motion for Leave to Amend Answer (ECF 85).[1] Defendant Koch Energy Services, LLC ("Koch") filed a Response (ECF 91) and Marathon filed a Reply (ECF 92). Having considered the parties' submissions and the applicable law, the Court ORDERS that Plaintiff Marathon Oil Company's Motion be GRANTED.

**I.   Factual and Procedural Background**

On October 1, 2009, Plaintiff Marathon Oil Company ("Marathon") and Defendant Koch Energy Services ("Koch") entered into a Base Contract for the Sale and Purchase of Natural Gas ("Base Contract"). ECF 67-3 at 1. The Base Contract is based on a form published by the North American Energy Standards Board. ECF 1-2 at ¶ 10. The Base Contract authorizes the purchase and sale transactions of natural gas, with Marathon as the Seller delivering gas and Koch as the Buyer receiving gas. ECF 67-3 at 3. The parties' transactions were governed by the contract's "Oral Transaction Procedure," whereby any purchase and sale transaction could

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF 29.

1

be "effectuated in an [electronic data interchange] transmission or telephone conversation." *Id.* at 2-4.

Pursuant to these procedures, the parties entered into two transactions relevant here. ECF 1-2 at ¶¶ 12-13. On September 4, 2020, the parties agreed that Marathon would sell and Koch would purchase 30,000 MMBTU's of gas on a Firm basis each day from November 1, 2020 until March 31, 2021. ECF 67-4; ECF 67-6. This agreement was reflected in Marathon's Transaction Confirmation No. 346595 and Koch's Transaction Confirmation No. 885742. ECF 67-4; ECF 67-6. On September 17, 2020, the parties agreed that Marathon would sell and Koch would purchase an additional 20,000 MMBTU's on a Firm basis for the same time period. ECF 67-5; ECF 67-7. This agreement was reflected in Marathon's Transaction Confirmation No. 346762 and Koch's Transaction Confirmation No. 890984. ECF 67-5; ECF 67-7. Koch later revised both of its Transaction Confirmations. ECF 67-8; ECF 67-9. The parties agree that, in both transactions, Bennington Hub, a "centralized physical gas hub in Oklahoma where six natural gas pipelines meet," was the specified point of delivery. ECF 71 at 5. Marathon's Transaction Confirmations indicated that gas would be delivered via the Midship Pipeline (ECF 67-4; ECF 67-5), one of the three pipelines running inbound to Bennington Hub. ECF 71-5 at ¶ 5. Koch's initial Transaction Confirmations designate the "MEP" as the relevant "Pipeline" though the Confirmations were later modified to designate the "GSPL" as the "Pipeline." ECF 67-8; ECF 67-9. The MEP and GSPL Pipelines run outbound from Bennington. ECF 71-5 at ¶ 5.

In February 2021, the States of Oklahoma and Texas experienced unusually cold temperatures, as well as snow and ice. ECF 1-2 at ¶ 14. Plaintiff alleges that its "wells, meters, and equipment, as well as the gathering and processing facilities that processed Marathon's

2

natural gas were impacted by th[e] extreme weather event." *Id.* On February 15, 2021, Marathon wrote to Koch to indicate that, "due to inclement weather and freezing temperatures in Oklahoma"—and, more specifically, its inability to ship via the Midship Pipeline—it would invoke the Base Contract's Force Majeure Clause to be "relieved of [its] obligation to deliver gas." *Id.* at ¶¶ 21-22. Koch rejected this invocation, ultimately sending Marathon a letter on March 12, 2021. ECF 67-16. In that letter, Koch stated its position that Marathon's declaration of force majeure was improper because, irrespective of purported interruptions to Marathon's preferred sources of gas, "replacement Gas was available for purchase at and/or delivery into" Bennington during the storm. ECF 67-16 at 1. Contending that Marathon was in breach of its contractual obligation, Koch sent a calculation of damages based on the Base Contract's "Spot Price" liquidated damages clause. *Id.* at 2. That clause provides:

> 3.2. The sole and exclusive remedy of the parties in the event of a breach of a Firm obligation to deliver or receive Gas shall be recovery of . . . an amount equal to the difference between the Contract Quantity and the actual quantity delivered by Seller and received by Buyer for such Day(s), multiplied by the positive difference, if any, obtained by subtracting the Contract Price from the Spot Price . . . .

ECF 67-3 at 6. Koch calculated its total damages under the provision to be $9,820,964, based on a "Cut Volume" of 157,500 MMBTU's over four days with fluctuating "Spot Prices." ECF 67-16 at 2. By comparison, the total price for the same volume of gas at the Contract price would have been $419,973.75.[2]

Marathon filed a state court petition in the 152nd Judicial District Court of Harris County, Texas, on March 12, 2021, seeking a declaratory judgment for the purpose of determining the parties' rights and obligations relating to Base Contract's Force Majeure

---

[2] This amount is calculated using the "Contract Px" of $2.6665/MMBTU multiplied by the 157,500 "Cut Volume" in Marathon's March 12, 2021 letter. ECF 67-16 at 2.

clause. ECF 1-1 at 6-8. Koch removed the case to the United States District Court for the Southern District of Texas on April 15, 2021 along with its original Answer. ECF 1. The Court entered a Docket Control Order on August 11, 2021 (ECF 11), requiring that Amended Pleadings be filed by April 1, 2022. On April 1, 2022, Koch filed a Motion for Leave to file a Second Answer, Affirmative Defense, and Counterclaim (ECF 20), which was granted on May 2, 2022 (ECF 24). In its Counterclaim for breach of contract, Koch reasserted its position that Marathon's invocation of force majeure was improper. ECF 25 at ¶¶ 78-82. Koch referenced its own Transaction Confirmations as having memorialized the sale. *Id.* at ¶¶ 57-64.

In its May 20, 2022 Answer to the Counterclaim, Marathon "denie[d] that the Transaction Confirmation[s] Koch references . . . [were] the correct, governing confirmation[s]." ECF 28 at ¶¶ 58-62. Marathon specifically denied that Koch's transaction confirmations specifying the GSPL pipelines governed because "(1) Marathon sent its transaction confirmations first, and (2) gas flows *away* from Bennington Hub on GSPL, making delivery *to* Bennington Hub on GSPL impossible." *Id.* at ¶ 62. Marathon's Answer did not challenge, or mention, the "Spot Price standard" or liquidated damages clause. *See generally* ECF 28.

On December 2, 2022, Marathon filed its Motion for Leave to File an Amended Answer pursuant to Federal Rule of Civil Procedure 15(a)(2) (ECF 85). It seeks to amend its Answer in two ways: (1) adding statements specifying that "Koch's designation of the GSPL pipeline was merely a receipt point" and thus that the designation would not affect Marathon's delivery obligation (ECF 85-1 at ¶¶ 60, 62, 63, 65) and (2) adding an affirmative defense contending that Section 3.2 of the Base Contract is an "unenforceable liquidated damages

4

clause." *Id.* at ¶¶ 73, 92. Koch filed a Response (ECF 91), arguing that (1) Rule 16(b), not Rule 15(a), provides the applicable standard, and (2) Marathon has failed to meet its burden under Rule 16(b).

## II. Legal Standards

### A. Motion for Leave to Amend Complaint under Rule 15(a)(2)

Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give leave to a party to amend its pleadings "when justice so requires." FED. R. CIV. P. 15(a)(2). A Court reviewing a Rule 15(a) motion to amend pleadings may consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Rule "evinces a bias in favor of granting leave to amend." *Id.* (citation omitted).

### B. Motion to Amend Scheduling Order under Rule 16(b)(4)

The Court's scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). The Court should consider four factors when determining whether good cause exists: (1) the explanation for the failure to meet the deadline; (2) the importance of the extension to the moving party; (3) potential prejudice to the non-moving party; and (4) the availability of a continuance to cure such prejudice. *Million v. Exxon Mobil Corp.*, 837 F. App'x 263, 266 (5th Cir. 2020); *see also Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997) (finding district court did not abuse its discretion in denying leave to extend time to designate an expert). Courts have "broad discretion to preserve the integrity and purpose of . . . pretrial order[s]." *Sw. Bell Tel. Co. v.*

*City of El Paso*, 346 F.3d 541, 547 (5th Cir. 2003).

### III. Analysis

#### A. Rule 16(b)(4) provides the applicable standard.

Where a scheduling order establishes a deadline for amendments to pleadings, Federal Rule of Civil Procedure 15(a) provides the standard for requests to amend made prior to the expiration of the deadline. *DynaEnergetics Europe GmbH v. Hunting Titan, Inc.*, Civil Action No. H-20-2123, 2022 WL 4350264, at *31 (S.D. Tex. Sept. 19, 2022). Where the request is made after the expiration of the deadline, "the movant must establish good cause . . . as required by Rule 16(b) before the court will apply Rule 15(a)'s more liberal standard to the motion to amend. *Id.* Therefore, the Court will proceed to analyze Marathon's motion for leave under the more exacting "good cause" standard set forth in Rule 16(b) as opposed to the standard in Rule 15(a)(2) that leave to amend be freely granted when justice requires.

#### B. After weighing the Rule 16(b) factors, the Court finds good cause for leave to amend Marathon's answer to Koch's counterclaim.

Marathon seeks to amend its Answer in two ways: (1) adding statements specifying that "Koch's designation of the GSPL pipeline was merely a receipt point" and thus that the designation would not affect Marathon's delivery obligation (ECF 85-1 at ¶¶ 60, 62, 63, 65), and (2) adding an affirmative defense contending that Section 3.2 of the Base Contract is an "unenforceable liquidated damages clause." *Id.* at ¶¶ 73, 92.

##### 1. Marathon's explanation for the failure to meet the deadline

First, Marathon has provided an adequate explanation for not moving for leave to amend within the deadline presented in the scheduling order. The only deadline for moving for leave to amend pleadings appears in the initial Docket Control Order. ECF 12. The Docket Control Order has been amended twice by agreement of the parties, but the pleading

6

amendment deadline was not addressed or extended. ECF 50; ECF 69. On the day of the deadline for filing motions for leave to amend, Koch filed an opposed motion for leave to amend its answer and to assert a counterclaim. ECF 20. Judge Lake granted Koch's Motion and the Amended Answer and Counterclaim was docketed on May 2, 2022. ECF 24. Thus, by the time Koch filed its Amended Answer and Counterclaim, the deadline to seek leave to amend pleadings had passed and it therefore was impossible for Marathon to seek leave to amend within the deadline presented in the Docket Control Order. Thus, Marathon has provided a sufficient explanation for why it failed to comply with the deadline for motions for leave to amend contained in the original scheduling order.

Although not necessarily part of the Rule 16(b) analysis in a case in which it would have been impossible to comply with the deadline in the docket control order, the fact remains that Marathon answered Koch's Counterclaim on May 20, 2022 and then waited over five months before moving for leave to amend its Answer. Marathon argues with respect to its request to add an affirmative defense, that it did not have the information necessary to determine whether "an unbridgeable discrepancy" existed between Koch's actual damages and the liquidated damages until two weeks prior to conferring with Koch regarding its position with respect to a motion for leave to amend. ECF 92 at 2. Therefore, the Court finds Marathon has presented a sufficient reason for its delay in seeking leave to amend its answer.

**2. The importance of the proposed amendment**

The proposed amendment adding the affirmative defense contesting the enforceability of the liquidated damages provision is very important because without amendment, Marathon would not be able to contest the provision as unenforceable on summary judgment or at trial, and could be subject to the argument that it waived the defense. *See NewCSI Inc. v. Staffing*

*360 Sols. Inc.*, 865 F.3d 251, 259 (5th Cir. 2017) ("A defendant who fails to raise an affirmative defense in its responsive pleading forfeits that defense unless the 'defendant raises the issue at a pragmatically sufficient time' and 'the plaintiff is not prejudiced in its ability to respond.'") (quoting *Lee v. United States*, 765 F.3d 521, 523-24 (5th Cir. 2014)). Marathon alleges that there is an "unbridgeable discrepancy" between Koch's "actual damages" and the liquidated damages calculated under the Spot Price standard. ECF 85-1 at ¶ 92. If unable to litigate the affirmative defense of unenforceability in this litigation, Marathon will have no ability to contest Koch's dramatically higher damages calculation under the liquidated damages provision. This reflects the type of "important[ce]" that weighs in favor of a finding of good cause to amend a pleading. *See Hudson v. L&W Supply Corp., Inc.*, Civil Action No. H-08-2471, 2009 WL 10693829, at *4 (S.D. Tex. June 18, 2009) (citing *Norton v. City of San Antonio*, 2007 WL 628791, at *1 (W.D. Tex. Feb. 27, 2007)) (granting motion for leave to amend to add an affirmative defense and noting that the amendment was important because it would limit damages if successful and would allow the parties to litigate all issues). Accordingly, the Court finds that this factor weighs strongly in favor of amending the scheduling deadline.

   **3.   The potential prejudice to Koch posed by the amendment**

With respect to the issue of prejudice, the first category of Marathon's proposed amendments do not reflect a "change [of Marathon's] position on which transaction confirmations govern . . . ." ECF 91 at 9. The proposed amendments are consistent with the position Marathon has taken since filing its original Answer and with the position it has asserted in multiple hearings before the Court: Marathon has consistently denied that Koch's Transaction Confirmations are the "correct, governing confirmations." ECF 28 at ¶¶ 58-62.

8

To the extent Marathon's proposed amendments represent a contention that the Confirmations "talk[] past each other" and can be simultaneously enforced, Koch has not shown that additional discovery is necessary to address an argument which has been present in the case for months. ECF 91 at 9 (stating, without elaborating, that the amendments would "inherently" require additional discovery and that Koch should be able to "test Marathon's assertions in discovery"). Thus, the Court finds any prejudice to Koch from the first category of changes in Marathon's proposed Amended Answer is minimal.

With respect to Marathon's proposed amendment seeking to plead the liquidated damages provision is unenforceable, Koch argues the amendment would prejudice Koch by preventing it from "(1) obtaining discovery on the contractual damages issue, (2) having its experts opine on the issue, (3) conducting depositions on the issue, and (4) developing a robust rebuttal to Marathon's proposed affirmative defense." *Id.* at 8. If Marathon is allowed to amend its answer to include an affirmative defense to Koch's liquidated damages claim, Koch will bear the initial burden to show that damages from a breach are "incapable or difficult of estimation," and that "the amount of liquidated damages called for is a reasonable forecast of just compensation." *Atrium Med. Ctr., LP v. Houston Red C LLC*, 595 S.W.3d 188, 192 (Tex. 2020) (citation omitted). To make this determination, courts must "examine the circumstances at the time the agreement was made," which may include factual evidence. *Id.* at 193-95 (relying on testimony and evidence related to industry standards and the parties' course of dealing when finding that the clause was not unenforceable as a matter of law). Further, whether an "unbridgeable discrepancy" exists between actual and liquidated damages, as urged by Marathon, may also involve additional facts that have not yet been discovered. *Id.* at 196. Thus, some additional discovery may be necessary to develop particular facts related

9

to the affirmative defense and the Court disagrees with Marathon's contention that Koch "need not conduct discovery at all" regarding the enforceability of the liquidated damages clause. ECF 92 at 3.

Allowing Marathon to amend its answer to assert the affirmative defense of unenforceability also could result in prejudice to Koch under the current December 16, 2022 expert designation deadline "for the party with the burden of proof on the issue," and the February 10, 2023 deadline for all expert discovery. ECF 69. However, Marathon seeks leave to add the affirmative defense prior to the issue being raised on summary judgment. *See Technip Offshore Contractors v. Williams Field Servs.*, Civil Action No. H-08-2471, 2006 WL 581273 at *15 (denying leave to add the affirmative defense that a liquidated damages provision was unenforceable where, after filing four amended complaints, the party requested leave to amend only in its response to a motion for summary judgment on the issue). The Court finds that Koch has presented evidence of prejudice and this factor weighs against granting leave to amend.

**4.     The ability to cure prejudice with an extension of current deadlines**

While Koch has presented some evidence of prejudice, the Court finds that prejudice can be cured by revising the current deadlines. In fact, contrary to its normal procedures which allow for only a single dispositive motion, the Court granted permission for Marathon to file an early motion for summary judgment (ECF 67) regarding the interpretation of the force majeure clause. The purpose in allowing an early motion for summary judgment is to allow the Court to initially interpret the force majeure clause which in turn may limit or expand the scope of discovery. ECF 53 at 3 (discussing the Court's concerns about the scope of discovery in this case). The Court's ruling on the motion for partial summary judgment

regarding interpretation of the force majeure clause may impact whether additional discovery needs to be conducted even absent the amendment to Marathon's Answer. Thus, the Court finds that any prejudice to Koch posed by the amendment adding the affirmative defense can be cured by appropriate extensions of the current deadlines. The fourth factor weighs in favor of granting leave to amend.

### 5. The balance of factors weighs in favor of amendment

Weighing all of the factors, the Court finds leave to amend should be granted, especially in light of the importance of the amendment and the ability to cure any potential prejudice to Koch by extending relevant deadlines. *See Hudson*, 2009 WL 10693829, at *4 (granting motion for leave to amend to add an affirmative defense and noting that the amendment was important because it would limit damages if successful, would allow the parties to litigate all issues, and "[e]xtending the pretrial deadlines to allow the parties to litigate these issues avoids potential prejudice.").

## C. The Rule 15(a) factors also weigh in favor of amendment

Because the Court has found good cause to amend the scheduling order under Rule 16(b)(4), it must analyze whether Marathon should be granted leave to amend under Rule 15(a). *DynaEnergetics*, 2022 WL 4350264, at *31. First, the Court does not find that this amendment results from "undue delay" or "bad faith or dilatory motive on the part of the movant." *Rosenzweig*, 332 F.3d at 864. As discussed above, Marathon argues that prior to receiving Koch's responses to the Third Set of Interrogatories on November 14, 2022, Marathon could not have pleaded an unbridgeable discrepancy between the actual damages liquidated damages—the basis by which it now challenges the clause. ECF 92 at 2; ECF 85-1 at ¶ 92. Accordingly, the record does not support a finding that the delay was "undue" or

that amendment is motivated by bad faith. Second, this is Marathon's first attempt to amend its Answer to Koch's counterclaim and Marathon has not failed to cure the deficiency in previous amendments. Third, the potential prejudice to Koch may be offset by continuance of deadlines. Last, the amendment is not futile because Texas law allows for the assertion of an affirmative defense of unenforceability in response to a claim for liquidated damages. *Atrium Med. Ctr.*, 595 S.W.3d at 192-93. Based on the pleadings and the text of the proffered Amended Answer, Court cannot find that the defense is unavailable to Marathon as a matter of law. Accordingly, Marathon should be granted leave to amend its Answer.

### IV. Conclusion and Order

Marathon has shown good cause to amend the scheduling order, and it should be given leave to amend its Answer in the interests of justice. Accordingly, it is ORDERED that Plaintiff Marathon Oil Company's Motion for Leave to File Amended Answer (ECF 85) be GRANTED. Marathon Oil Company is permitted to file and serve its Amended answer within 14 days of entry of this Order.

Signed on January 18, 2023, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge